# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

RADLEY BRADFORD, individually, and on behalf of all others similarly situated,

    Plaintiff,

v.

JPMORGAN CHASE BANK, N.A.,

    Defendant.

Case No. 4:20-cv-02669

## CLASS ACTION COMPLAINT

**NOW COMES** Plaintiff, RADLEY BRADFORD, individually, and on behalf of all others similarly situated, through undersigned counsel, complaining of Defendant, JPMORGAN CHASE BANK, N.A., as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action seeking damages as well as injunctive relief for Defendant's violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* (the "TCPA").

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

3. Venue in this district is proper under 28 U.S.C. § 1391(b)(2).

## PARTIES

4. RADLEY BRADFORD ("Plaintiff") is a natural person, over 18-years-of-age, who at all times relevant resided at 5334 Gold Stream Drive, Houston, Texas 77066.

5. Plaintiff is a "person" as defined by 47 U.S.C. § 153(39).

1

6. JPMORGAN CHASE BANK, N.A. ("Defendant") is a banking association organized and existing under the laws of the United States.

7. Defendant has a principal place of business at 1111 Polaris Parkway, Columbus, Ohio 43271.

8. Defendant is a "person" as defined by 47 U.S.C. § 153(39).

## FACTUAL ALLEGATIONS

9. At all times relevant, Plaintiff was the sole operator, possessor, and subscriber of the cellular telephone number ending in 7679.

10. At all times relevant, Plaintiff's number ending in 7679 was assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

11. At all times relevant, Plaintiff was financially responsible for his cellular telephone equipment and services.

12. Years ago, Plaintiff applied for and was issued (1) a Chase Freedom® Visa Card; and (2) CHASE® Southwest Credit Card by Defendant.

13. Plaintiff activated these cards, using his cards for personal purchases.

14. However, as result of financial hardship, Plaintiff was not able to keep up with payments.

15. In or about March of this year, Plaintiff received an automated payment reminder via SMS message.

16. Plaintiff responded by messaging "STOP."

17. Three months later – on June 22, 2020 – Plaintiff notified Defendant's representative, Mike, he is filing bankruptcy.

18. During this call, Plaintiff verbally requested for all phone calls/texts to cease.

19. On June 30, 2020, Plaintiff received the following text message from Defendant ("First Text Message").



20. On July 11, 2020 Plaintiff received the following text message from Defendant ("Second Text Message").



21. On July 13, 2020 Plaintiff received the following text message from Defendant ("Third Text Message").



22. Plaintiff did not provide express consent to receive calls/texts after Plaintiff's June 22, 2020 revocation of consent.

23. Plaintiff significantly values his privacy and solitude.

24. Accordingly, Plaintiff doesn't consent to receiving automated telephone calls and/or text messages when signing up for services.

25. In addition, Plaintiff takes measures to ensure that there is no doubt as to whether a company has consent to contact him with automated calls and/or texts, so he requests employee identification numbers when he confirms they do not have consent to contact him.

26. Defendant's unwanted text messages have invaded Plaintiff's privacy and have caused Plaintiff actual harm, including but not limited to, aggravation that accompanies unsolicited text messages, increased risk of personal injury resulting from the distraction caused by the text messages, wear and tear to Plaintiff's cellular phone, intrusion upon and occupation of Plaintiff's cellular telephone, temporary loss of use of Plaintiff's cellular phone, loss of battery charge, loss of concentration, mental anguish, nuisance, the per-kilowatt electricity costs required to recharge Plaintiff's cellular telephone as a result of increased usage of Plaintiff's telephone services, and wasting Plaintiff's time.

## CLASS ALLEGATIONS

27. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

28. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3) individually, and on behalf of all others similarly situated ("Putative Class") defined as follows:

> All persons residing in the United States: (a) to whom Defendant and/or a third party acting on Defendant's behalf, placed one or more non-emergency phone call(s) and/or sent automated text message(s); (b) containing account alerts; (c) to their cellular telephone number; (d) using an automatic telephone dialing system; (e) without their prior express written consent; and (f) at any time in the period that begins four years before the date of the filing of the original complaint through the date of class certification.

4

29. The following individuals are excluded from the Putative Class: (1) any Judge or Magistrate Judge presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Putative Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released.

**A. Numerosity**

30. The exact number of members of the Putative Class are unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable.

31. Upon information and belief, Defendant placed phone calls and/or sent automated text messages to thousands of consumers who fall into the definition of the Putative Class.

32. Members of the Putative Class can be objectively identified from records of Defendant to be gained in discovery.

**B. Commonality and Predominance**

33. There are many questions of law and fact common to the claims of Plaintiff and the Putative Class, and those questions predominate over any questions that may affect individual members of the Putative Class.

**C. Typicality**

34. Plaintiff's claims are typical of members of the Putative Class because Plaintiff and members of the Putative Class are entitled to damages as result of Defendant's conduct.

**D. Superiority and Manageability**

35. This case is also appropriate for class certification as class proceedings are superior to all other available methods for the efficient and fair adjudication of this controversy.

36. The damages suffered by the individual members of the Putative Class will likely be relatively small, especially given the burden and expense required for individual prosecution.

37. By contrast, a class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

38. Economies of effort, expense, and time will be fostered and uniformity of decisions ensured.

### E. Adequate Representation

39. Plaintiff will adequately and fairly represent and protect the interests of the Putative Class.

40. Plaintiff has no interests antagonistic to those of the Putative Class, and Defendant has no defenses unique to Plaintiff.

41. Plaintiff has retained competent and experienced counsel in consumer class action litigation.

### CLAIMS FOR RELIEF

**COUNT I:**
**Violations of 47 U.S.C. § 227 *et seq*. (TCPA)**
**(On behalf of Plaintiff and the Members of the Putative Class)**

42. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

43. Defendant placed or caused to be placed non-emergency calls, including but not limited to the aforementioned collection calls, to Plaintiff's cellular telephone utilizing an artificial or prerecorded voice without Plaintiff's consent in violation of 47 U.S.C. § 227 (b)(1)(A)(iii).

44. Although the TCPA does not define a "call," the Federal Communcations Commission (FCC), the agency implementing the TCPA, has interpreted the TCPA to "encompass[] both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls," which are generally referred to as text messages. *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd. 14014, 14115 (July 3, 2003); *see also Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) (holding that the FCC's interpretation that a text message is a "call" under the TCPA is reasonable).

45. The TCPA defines an automatic telephone dialing system as equipment which has the ***capacity*** – (A) to store or produce numbers to be called, using a random or sequential number generator; and (B) to dial such numbers. 47 U.S.C. § 227(a)(1).

46. Upon information and belief, the system employed by Defendant to send the text messages to Plaintiff's cellular phone has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers.

47. As plead above, Plaintiff revoked consent to be called on Plaintiff's cellular telephone on multiple occasions.

48. As plead above, Plaintiff was severely harmed by Defendant's collection calls to Plaintiff's cellular telephone.

49. Upon information and belief, Defendant has no system in place to document whether they have consent to contact consumers on their cellular telephones.

50. Upon information and belief, Defendant has no policies and procedures in place to honor consumers' requests that collection calls cease.

51. Upon information and belief, Defendant knew that their collection practices were in violation of the TCPA, yet continued to employ them in order to maximize efficiency and revenue.

52. As a result of Defendant's violations of 47 U.S.C. §227(b)(1)(A)(iii). Plaintiff is entitled to receive $500.00 in damages for each violation.

53. As a result of Defendant's knowing and willful violations of 47 U.S.C. §227(b)(1)(A)(iii), Plaintiff is entitled to receive up to $1,500.00 in treble damages for each violation.

**WHEREFORE**, Plaintiff, on behalf of himself and the members of the Putative Class, requests the following relief:

A. an order granting certification of the proposed class, including the designation of Plaintiff as the named representative, and the appointment of the undersigned as Class Counsel;

B. an order finding that Defendant violated the TCPA;

C. an order enjoining Defendant from placing or causing to place further violating calls and or automated text messages to consumers;

D. an award of $500.00 in damages to Plaintiff and the members of the Putative Class for each such violation;

E. an award of treble damages up to $1,500.00 to Plaintiff and the members of the Putative Class for each such violation; and

F. an award of such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

DATED: July 30, 2020                                         Respectfully submitted,

**RADLEY BRADFORD**

By: */s/ Mohammed O. Badwan*

Mohammed O. Badwan
SULAIMAN LAW GROUP, LTD.
2500 South Highland Avenue
Suite 200
Lombard, Illinois 60148
+1 630-575-8181
mbadwan@sulaimanlaw.com